Delia G. BELCHER, Kathleen V. Lawton and Clay D. Sharp, Appellants,

v.

Delmas GISH, Individually, and as Superintendent of the Central City Board of Education, and P. A. Shaver, Jr., William M. Shaver, Marion F. Tinsley, Morris Richey, and Dan Carroll, Individually, and as Members of the Central City Board of Education, Appellees.

Supreme Court of Kentucky.

July 29, 1977.

Rehearing Denied Oct. 7, 1977.

William P. Donan, Donan & Vick, Greenville, for appellants.

Sam T. Jarvis, Jarvis, Cornett & Payton, Greenville, F. C. Bryan, Bryan & Fogle, Mount Sterling, for appellees.

JONES, Justice.

Mrs. Belcher, Mrs. Lawton and Mr. Sharp prosecute this appeal from an order and judgment sustaining the Central City Board of Education's motion for summary judgment. The principal question presented is the validity of a regulation adopted by the Central City Board of Education at its monthly meeting on December 5, 1972. That regulation provides:

"Effective immediately, all personnel of the Central City School System shall be required to retire at the end of the school year in which they reach the age of 65 years with the exception of anyone at present under special contract."

On December 15, 1972 the superintendent wrote a letter to Belcher, Lawton and Sharp informing them of the board's adoption of the regulation.

At the beginning of the school year 1973–74, Belcher, Lawton and Sharp, teachers in Central City's school system, were more than 65. On May 1, 1973 a registered letter signed by the board's chairman, secretary, and superintendent was sent to Belcher, Lawton and Sharp. That letter follows:

"According to School Law KRS 161.-720(4), after July 1, 1973 you will no longer be on a continuing service contract but rather on a limited contract, therefore there is no legal obligation on the part of the Board of Education to re-employ you. After due consideration, the Board has decided not to renew your contract effective July 1, 1973.

We thank you for the many services you have rendered in the past to the Central City Schools."

Belcher, Lawton and Sharp requested the superintendent to inform them the reason for their discharge. They also expressed a

**266**

desire to continue teaching for the 1973–74 school year. On June 4, 1973, the superintendent and the board notified them that:

> "The Central City Board of Education has adopted a policy of not hiring teachers whose status changes from a continuing to a limited contract basis.
>
> "Since you are in this classification, you were not rehired for the school year 1973–1974."

It is the contention of Belcher, Lawton and Sharp that the age policy adopted by the Central City board is invalid. They assert that it violates the Kentucky Constitution as well as the United States Constitution. It is also their contention that the regulation is in conflict with the compulsory retirement age for teachers as defined in KRS 161.600.

The Kentucky Constitution provides that, "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state." (Ky.Const. Section 183.) Pursuant to section 183, the legislature enacted laws that outlined duties, powers and limitations of various boards of education within the state. These are compiled in Chapters 156 through 163, Kentucky Revised Statutes.

Among other duties, boards of education are empowered to "make and adopt, and may amend or repeal rules, regulations, and bylaws of its meetings . . . and for the qualification and employment of teachers and the conduct of pupils. . . ." KRS 160.290.

■ For those teachers who have "toiled long in the vineyard," the legislature provided a plan for their tenure and retirement. A pertinent provision applicable to this controversy reads:

> "The term 'continuing service contract' shall mean a contract for the employment of a teacher which shall remain in full force and effect until the teacher resigns or retires or reaches the age of 65, . . . ." KRS 161.720(4).

There is no ambiguity in this provision. It is the opinion of this court that it means a continuing service contract ends by opera-

tion of law on the sixty-fifth birthday. After age sixty-five the teacher reverts to a non-tenure status, and may be employed at the discretion of the Board of Education upon a limited contract for one year at a time. The cloak of tenure falls from his shoulders, and his reemployment on a yearly basis is dependent on the grace of the board of education. At age seventy the compulsory retirement provision is activated. KRS 161.600. The relation of a teacher and a board of education is contractual. Any legal rights which a teacher has to employment as such must rest on contract. He has no vested right to employment to teach in the absence of contract.

Whether the age policy adopted by the Central City Board of Education is for the best interest of the school system is for it to decide. It is not the function of this court to substitute a policy for that of the board. The legislature reposed that function in its charge.

■ The right of Belcher, Lawton and Sharp to tenure under a continuing service contract terminated on their sixty-fifth birthday. The Central City Board of Education gave each of them the required notice before May 15, 1973, that they would not be employed for the school year 1973–74. KRS 161.750(2). When that notice was received by them they had neither a continuing nor a limited contract.

In view of the foregoing conclusions the trial court properly sustained the Central City Board of Education's motion for summary judgment.

The judgment is affirmed.

REED, C. J., and CLAYTON, JONES, LUKOWSKY, PALMORE and STEPHENSON, JJ., concur.

STERNBERG, J., dissents.

STERNBERG, Justice, dissenting.

On December 5, 1972, the Central City Board of Education adopted a regulation which provided:

> "Effective immediately, all personnel of the Central City School System shall

be required to retire at the end of the school year in which they reach the age of 65 years, with the exception of anyone at present under special contract."

The appellants Belcher and Lawton were each over 65 years of age prior to the 1972–73 school year. The appellant Sharp had his 65th birthday during the 1972–73 school year. Each of them had been teaching under a continuing service contract. The term "continuing service contract" means a contract to teach which remains in full force or effect until the teacher resigns or retires, or reaches the age of 65 years, or until it is terminated or suspended. KRS 161.720(4). Each of the appellants, being 65 years of age or older at the end of the 1972–73 school year, had lost continuing-service-contract status. KRS 161.720(4). Consequently, subsequent employment was pursuant to a limited contract. KRS 161.-750(1). A "limited contract" means a contract for the employment of a teacher for one year only or for that portion of a school year remaining at the time of employment. As to the status of a limited contract teacher, it is provided in KRS 161.750(2):

"Any teacher employed under a limited contract and ineligible for a continuing contract shall at the expiration of such limited contract be deemed re-employed under the provisions of KRS 161.720 to 161.810 for the succeeding school year at the same salary plus any increment or decrease as provided by the salary schedule, unless the employing board shall give such teacher written notice on or before the fifteenth day of May of its intention not to re-employ him; upon request by the teacher, such written notice shall contain the specific reason or reasons why the teacher is not being re-employed. Such teacher shall be presumed to have accepted such employment, unless he shall notify the board of education in writing to the contrary on or before the fifteenth day of June, and a written contract for the succeeding year shall be executed accordingly. (Enact. Acts 1942, ch. 113, § 4; 1944, ch. 98; 1964, ch. 41, § 4; 1970, ch. 169, § 1.)"

Each of the appellants received a letter dated December 15, 1972, advising them of this regulation and also advising them that none of them would be hired for the school year beginning July 1, 1973. Even though the appellants made known to the Board that they desired to continue teaching as they had been, they were advised that they would not be rehired because of their change in status from continuing to limited contract.

The appellants filed suit in the Muhlenberg Circuit Court seeking a reinstatement to their respective teaching positions, for compensation, and for punitive damages. Appellees' motion for a summary judgment was sustained. Hence, this appeal.

As taken from their brief, appellants' complaints are:

"I. Did the lower court err in overruling appellants' motion for a summary judgment and sustaining appellees' motion for a summary judgment?

(A) The regulation enacted on December 5, 1972 is violative of KRS 161.600 and is clearly arbitrary and discriminatory and is void.

(B) Age discrimination is arbitrary and capricious and bears no relation to the purpose of education.

(C) The regulation violates the due process clause of the Fourteenth Amendment of the United States Constitution."

The permissive and compulsory retirement ages for teachers are set out in KRS 161.600. In substance, this statute provides:

"Retirement conditions—(1) Any member who has attained the age of sixty (60) years and who has completed five (5) years of service as a teacher in Kentucky subsequent to July 1, 1941, *may retire* upon written application to the board of trustees of the teachers' retirement system. Any member *shall be automatically retired* as of July 1 following the end of the fiscal year in which he attains the age of seventy (70). Providing, however, That a person reaching age seventy (70) and having fewer than five (5) years of Kentucky service shall receive a refund

of his accumulated contributions as provided in subsection (7) of KRS 161.470 in lieu of a retirement annuity." (Emphasis added).

The Kentucky Constitution provides that, "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state." (Ky.Const. § 183). Accordingly, the General Assembly has set aside and delegated to the various boards of education the duties, powers and responsibilities to carry out this design. KRS 160.290. Thus, the Central City Board of Education could adopt such rules and regulations pertaining to the qualification and employment of teachers as do not conflict with the United States Constitution, the Kentucky Constitution, or the Kentucky statutes.

In *Board of Education of Harrodsburg v. Bentley*, Ky., 383 S.W.2d 677 (1964), we said:

"  *   *   * We have neither the right nor the inclination to substitute our view for the Board's view as to the exercise of its sound discretion as it relates to matters within the province of the Board's responsibilities. It does become our function to examine the regulation and determine whether it is unreasonable or arbitrary, and therefore illegal.  *   *   * "

Illustrative is *Johnson v. Dixon*, Ky., 501 S.W.2d 256 (1973), in which Howard Johnson and his wife, Janet, both natives of Barren County, Kentucky, were employed by the Hart County Board of Education on one-year contracts to teach at the secondary level. Near the end of the school year they were told by the superintendent that they would not be reemployed at the secondary level because there were two Hart County natives who were available for the positions, and the Board's policy was to give preference to Hart County natives. The Johnsons were advised they could be employed to teach at the primary level, but they refused. Instead, they brought an action charging that the denial of re-employment at the secondary level was arbitrary and discriminatory and in violation of their constitutional rights. In disposing of the case, this court said:

"Our conclusion is that such a policy would be unconstitutionally discriminatory and preferential, in violation of Sections 1, 2 and 3 of the Kentucky Constitution."

The case at bar is not one where the Board is attempting to oust the incumbent, but is one in which the *Board* attempts to disqualify each person who attains the age of 65 years. The compulsory retirement age fixed by the resolution differs from the compulsory retirement age established by statute. It presents a serious issue which has not heretofore been presented to this court. The right of a *state* to establish a mandatory age of retirement is well established. Cf. 147 A.L.R. 299; *Townsend v. County of Los Angeles*, 49 Cal.App.3d 263, 122 Cal.Rptr. 500. The right of a district board of education to establish mandatory retirement at an age less than that provided by statute is not so well established.

The General Assembly of Kentucky has spoken on the subject, and we find that,

(1) Retirement is permitted at the age of 60 years. KRS 161.600.

(2) A continuing service contract tenure may continue until the age of 65 years. KRS 161.720(4).

(3) Limited contract tenure is permitted between the ages of 65 and 70 years. KRS 161.600.

(4) Compulsory retirement is at the age of 70 years. KRS 161.600.

The resolution of the Central City Board of Education does not say that persons teaching under a limited service contract status will not be employed. It says, arbitrarily, that persons 65 years of age or older will not be employed. This is a big difference—as a matter of fact, a 5-year difference. We ascribe to the proposition that there is a fundamental right to seek and pursue a lawful occupation; however, appellants have no fundamental right to teach in the Central City school system. That right comes to them by statute, which the Board cannot abrogate.

In *Roppel v. Shearer*, Ky., 321 S.W.2d 36 (1959), this court said, "Whenever the Board adopted regulations which conflicted with the statute, this court has consistently refused to sustain the regulations." In *Louisville & Nashville R. Co. v. Commonwealth*, Ky., 488 S.W.2d 329 (1972), we held that, "A conflict exists between an ordinance and a statute when the ordinance permits conduct which is prohibited by statute or prohibits conduct which is permitted by statute."

The prohibition provided by the resolution is employment beyond 65 years of age. The statute prohibits employment beyond 70 years of age. Thus, the resolution does not permit conduct which is prohibited by statute. It does, however, prohibit conduct which is permitted by statute in that it prohibits employment beyond 65 years of age, when the statute permits employment to 70 years of age.

The legislature has established the policy on age, and it is not within the authority of the Board to deviate from it.

I respectfully dissent.